**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WILLIAM PIERCE HONNOLD,
Plaintiff,

v.

AER LINGUS LIMITED,
Defendant.

Case No. ____________________

Jury Trial Demanded

**COMPLAINT AND JURY DEMAND**

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff William Pierce Honnold maintained his principal and permanent residence in Johnson County, Kansas, at the time of the events alleged, and currently resides in Overland Park, Kansas. Defendant Aer Lingus Limited is an Irish commercial air carrier operating international passenger transportation to the United States, including scheduled service to John F. Kennedy International Airport (JFK) in New York.

2. This action arises under Article 17(1) of the Convention for the Unification of Certain Rules for International Carriage by Air (Montreal Convention). This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

3. The United States is an authorized forum under Article 33(2) of the Montreal Convention. At the time of the accident, Plaintiff's principal and permanent residence was in Kansas. Defendant operates passenger services to and from the United States and, on information and belief, conducts its passenger-carriage business from qualifying premises in the United States, including at JFK.

4. Plaintiff invokes personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). The claim arises under federal law; on information and belief, Defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction for this claim; and

Defendant's purposeful, suit-related contacts with the United States, including its operation of the contracted Dublin-to-JFK service, support jurisdiction consistent with the Fifth Amendment. *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, 970 F.3d 1269, 1283–85 (10th Cir. 2020); *Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 263–67 (5th Cir. 2024).

5. Venue is proper under 28 U.S.C. § 1391(c)(3) because Defendant is incorporated in Ireland and is not resident in the United States for federal venue purposes.

**II. FACTUAL ALLEGATIONS**

6. On September 19, 2025, while staying at the Masonic Hotel in London, Plaintiff purchased a London-to-New York international airline itinerary with a connection in Dublin, selecting transportation that offered an earlier arrival in New York.

7. On September 20, 2025, Plaintiff completed the London-to-Dublin segment and proceeded to Terminal 2, Gate G6, at Dublin Airport for the connecting Aer Lingus flight to JFK. Airline personnel scanned his boarding pass, retained his passport and identification, and instructed him to stand nearby and wait for continued service, advising that he could not board with the other passengers at that time. The aircraft subsequently departed without him.

8. Plaintiff alleges, on information and belief, that boarding-related acts or communications by Defendant's personnel initiated or materially contributed to the ensuing airport security intervention. The content of any communications between airline personnel and law-enforcement officers is presently within their knowledge and subject to discovery.

9. After the aircraft departed, approximately fifteen armed airport security and law-enforcement personnel surrounded Plaintiff at the gate. Plaintiff observed officers pointing firearms toward him, including personnel with long guns positioned behind nearer officers and at other boarding arms and windows. Explosive-detection dogs were brought to Plaintiff and

repeatedly circled him. While red airport evacuation lights flashed and members of the public evacuated, officers directed Plaintiff to remain within their armed perimeter rather than leave with the public.

10. During the armed confrontation and dog search, Plaintiff recalls the first episode of losing consciousness or blacking out, accompanied by forceful back-and-forth movement of his head and neck. He experienced physical neck symptoms beginning during this episode. He does not allege a confirmed impact of his head against an external surface or a medically established cause of the episode.

11. After the dog search, Garda and airport police officers escorted Plaintiff through the passenger loading bridge to the airfield and placed him in a black SUV-type vehicle. Two Garda officers occupied the vehicle, including the driver; an airport police officer sat to Plaintiff's left with his hand on his gun. During the drive to a secure facility, which Plaintiff perceived as extremely fast, Plaintiff recalls a second episode of lost or altered consciousness and forceful head-and-neck movement.

12. Later that evening at a hotel in Dublin, Plaintiff recalls a third episode of lost or altered consciousness with further head-and-neck movement. That evening he also experienced severe headache, nausea, repeated vomiting, and retching, including while in a hotel bathroom after ordering food. Plaintiff cannot presently determine whether his head struck an external surface during any of these events.

13. Following the incident, Plaintiff has experienced continuing neck pain and whiplash-type symptoms, gastrointestinal distress, recurrent vomiting and retching, substantial weight loss, and gastroparesis. He also experiences PTSD and anxiety, including flashbacks associated with exacerbation of his gastrointestinal symptoms. Plaintiff continues to seek medical care in Kansas. His treating physician has advised him that he will require ketamine treatment for

the rest of his life for PTSD-related symptoms. Plaintiff alleges continuing physical injury and future treatment needs.

## III. COUNT I: MONTREAL CONVENTION, ARTICLE 17(1)

14. Plaintiff incorporates paragraphs 1 through 13.

15. Plaintiff's London-to-New York itinerary was booked as connecting international carriage through Dublin. After completing the inbound segment, he was engaged in the airline-directed boarding process for Defendant's Dublin-to-JFK flight, including scanning of his boarding pass, retention of his travel documents, and instructions to wait nearby for continued service. Plaintiff alleges that the ensuing security intervention arose from that boarding process, began at the departure gate, and continued there after the aircraft departed. Plaintiff alleges that this unexpected or unusual event, external to him, occurred in the course of the operations of embarking within Article 17(1).

16. The alleged accident caused Plaintiff bodily injury, including neck injury and ongoing whiplash-type symptoms, followed by further physical symptoms and persistent gastrointestinal dysfunction. Plaintiff seeks damages for those bodily injuries and their compensable consequences under Article 17(1), subject to the applicable liability framework and defenses in Articles 20 and 21.

**IV. PRAYER FOR RELIEF**

Plaintiff demands $5,000,000 in compensatory damages, subject to proof, including past and future physical pain and suffering, physical impairment, reasonable past and future medical and treatment expenses, lost earnings or earning capacity where established, and psychological injury to the extent legally recoverable in connection with qualifying bodily injury, together with taxable costs, lawful interest, and other appropriate relief. Plaintiff does not seek punitive, exemplary, or other noncompensatory damages.

**V. DESIGNATION OF PLACE OF TRIAL**

Pursuant to D. Kan. Rule 40.2(a), Plaintiff requests Kansas City, Kansas, as the place of trial.

**VI. JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted,

s/s *William Pierce Honnold*

William Pierce Honnold
Plaintiff, appearing on his own behalf; admitted to practice before the U.S. District Court for the District of Kansas
U.S. District Court for the District of Kansas bar number: 30381
Kansas Supreme Court registration number: 30381
Mailing address: 4001 West 105th Street, Apartment 417
Overland Park, Kansas 66207
Telephone: (913) 749-6974 Fax:
Email: williampiercehonnold@gmail.com
Date: October 31, 2026